IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ALEXANDER MIRZA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-1579 |
| ROBERT ROCHE, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, ALEXANDER MIRZA, by and through his undersigned attorneys, complains against Defendant, ROBERT ROCHE, as follows:

**I. PARTIES**

1. Plaintiff, ALEXANDER MIRZA ("Mirza"), is a citizen of the State of California.

2. Defendant, ROBERT ROCHE, ("Roche") is the chairman of Cachet LP and resides at 10540 South Lorel, Oak Lawn, Illinois 60453-5155.

**II. JURISDICTION AND VENUE**

3. The parties are completely diverse in citizenship and the amount in controversy is in excess of $75,000 excluding interest and costs. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this District under 28 U.S.C. § 1391.

**III. ALLEGATIONS COMMON TO ALL COUNTS**

5. Mirza and Cachet Hotel Group Limited and Cachet Hotel Group, Limited, LP. (hereinafter collectively referred to as "Cachet") entered into an Employment Agreement.

6. Illinois law applies to Mirza's Employment Agreement with Cachet.

1

7. The Employment Agreement was amended from time to time with each amendment giving additional compensation and lengthening the term of the contract. (Employment Agreement attached hereto as Exhibit "A" and incorporated herein).

8. The Employment Agreement provided that if Mirza were terminated not for cause he would receive severance payment.

9. The last amendment ("Second Amendment to the Amended and Restated Employment Agreement") provides that the term of Mirza's employment was from April 1, 2013 to May 31, 2021.

10. The Employment Agreement also provided Mirza a salary, cash incentives, and an equity interest in Cachet.

11. Mirza's base salary was $400,000 with a guaranteed 4% annual raise. It also provided for a monthly housing allowance of $5,000.

12. The most recent amendment to the Employment Agreement provides that Mirza would receive a guaranteed $200,000 bonus (50% of his compensation) and an additional 35% discretionary bonus.

13. It should be inferred that if Roche was not satisfied with Mirza's performance, the contracts would not have been extended and the bonus would not have been changed from "discretionary" to "guaranteed."

14. The Employment Agreement provide in paragraph 6.2(b) for payment to Mirza for one year following his termination if not fired for cause and states as follows:

> In the event of a Termination by the Company other than for Cause… in addition to any accrued by unpaid salary or other compensation or expense reimbursement payable to executive as of the date of Termination, the company shall also pay the Executive an amount equal to twelve (12) months' base salary at the rate in effect on the date of Termination. Such payment shall be made in twelve equal monthly installments commencing on the first regular payroll date that falls at least thirty

days (30) days after the date of Termination. In the event of a termination by the Company other than for Cause or by Executive for Good Reason, executive shall also be eligible to receive any incentive compensation awarded to him pursuant to Section. 3.2(a) with respect to the calendar year in which the termination occurs, but shall not be eligible to receive incentive compensation for any subsequent year.

15. The Employment Agreement defines cause in paragraph 6.3 as follows:

(a) the term "Cause" shall mean (i) willful misconduct that is materially injurious to any of the Companies or any of their respective employees, or that materially and adversely affects the assets, liabilities, business, reputation or prospects of any of the Companies; (ii) breach of fiduciary duty to the Companies involving personal profit; (iii) the Executives intentional refusal to perform his duties under this agreement in a competent manner; (iv) fraud, embezzlement, or other misappropriation by the Executive of funds of property of any of the Companies or any other criminal act committed during the Term against the Companies involving dishonesty or willful misconduct intended to injury the Companies (whether or not a felony)…(viii) the breach by the executive in any material respect of his obligations under this Agreement…

16. Mirza co-founded Cachet in Shanghai and spent the next five years as CEO of the multinational company with seven hotels open in 2017 and fifteen properties under contract in markets such as Shanghai, Chengdu, Los Cabos and New York. Under Mirza's leadership, the company raised capital from 3rd party investors at $160mm in 2016 and $250mm valuation in 2017. Cachet also won high profile awards and was named the Up and Coming Management Team and Top Boutique Hotel Designer.

17. In the past few years he has also been widely recognized for his accomplishments in industry publications and been a speaker and moderator of CEO panels at leading industry events including the Harvard Real Estate Conference in Boston, M.I.T. and the Young Jewish Professionals conference in New York. In 2016, he formed a non-profit focusing on global travel security and anti-terrorism called the Global Security Innovation Council, whose participants include government agencies in Canada and the U.S.

18. Under Mirza Cachet's corporate organization was widely recognized as being almost 50% women, with over one-third of General Managers being women or minorities (compared to 5% for the industry).

19. Cachet's co-founder and then President of Southeast Asia, Kimy Chen, gave this response in a recent interview in Travel Weekly Asia Magazine, October, 2017 to the following question: "Who were your personal mentors in building a career in hospitality?" "My CEO Alex Mirza has been a tremendous role model. I admire all the great things he has done for Cachet and respect the mistakes so I can avoid them. They say no great success was achieved without going through obstacles and challenges."

20. Cachet's then President of the Americas, Meredith Gelacek, an industry veteran who has worked with Mirza in two previous companies, stated in an interview published on November 23, 2016, "Alex is what led me to Cachet. He's a big supporter of women and makes a point to hire women into management positions."

21. Mirza mentored and promoted Roche's own niece, Claire Hara, who became a General Manager at one of Cachet's Shanghai properties. Mirza was singled out by Roche's sister Jean for this accomplishment at a family event in Los Angeles in 2017.

22. There was no possible "cause" as defined in the Employment Agreement for terminating Mirza as CEO of Cachet.

23. Mirza incurred many expenses on an American Express account that was managed by Cachet's controller. All expenses were visible on daily basis online and related to Cachet's business. While Mirza was the guarantor, this account was paid by Cachet and was not mixed with any of Mirza's personal financial accounts.

24. Mirza provided copies of this card to seven individuals employed by Cachet including CFO Martin Key, General Counsel, and Meredith Gelacek. The controller paid the card monthly since 2016 and Key and General Counsel, who used the card themselves, were supportive of this to keep expenses transparent and easily manageable. Furthermore, the card's benefits included insurance for purchases, airport club access, hotel stays with free breakfast, upgrades and more.

25. The annual membership dues for the account were paid for by Mirza's personal credit card and therefore the reward points accrued to Mirza who also took personal liability for this account.

26. Mirza's decision to offer employees this card is not a breach of company policy. There was no indication the company had any issues with this arrangement. There was no notice or complaint ever made about this during his tenure as CEO.

27. Upon Mirza's termination, there was $108,000 due on this corporate card including over $25,000 for Cachet employee stays at the New York hotel and over $7,000 for travel to the Los Cabos property. Other charges include Los Angeles office expenses, company software licenses and marketing agencies used by the company. Only a small percentage of the outstanding expenses were incurred by Mirza himself. *See* (American Express Statements Attached Hereto as Exhibit "B" and incorporated herein).

28. At the time of his termination Mirza was owed the following final compensation: twelve months of base pay ($432,640), plus 2017 minimum bonus ($200,000), plus unpaid expenses ($108,192.29) totaling: $740,832.29.

**IV. CLAIM**

**COUNT I**
***(ILLINOIS WAGE PAYMENT AND COLLECTION ACT)***

29. Plaintiff restates and re-alleges the allegations contained in Paragraphs 1 through 28 of the Complaint as Paragraph 29 of Count I of the Complaint as if fully set forth herein.

30. Mirza was an "employee" under the Act.

31. Cachet is an "employer" under the Act.

32. Mirza was terminated without cause.

33. Pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq., which Cachet has violated, Mirza is entitled to be compensated for the wages owed to him.

34. As a result of Cachet's breach, Mirza has been damaged in an amount in excess of $1,000,000, in direct violation of 820 ILCS 115/4 & 115/5.

35. 820 ILCS 115/13 provides:

"In addition to an individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation."

36. Robert Roche, knowingly permitted Cachet to not pay Mirza's earned compensation.

6

WHEREFORE, Plaintiff, ALEXANDER MIRZA, respectfully requests that this Court enter judgment in his favor and against Defendant, ROBERT ROCHE, and award him damages in an amount in excess of $1,000,000, plus reasonable attorneys' fees as provided for by the Illinois Attorneys' Fees in Wage Actions Act, 705 ILCS 225/1, a two-percent per month statutory penalty, pre-judgment interest, expenses, costs, and for any further and other relief that this Court deems just and appropriate under the circumstances.

    Respectfully submitted,

    **ALEXANDER MIRZA**,
    Plaintiff

By:   /s/*Alexander N. Loftus*
    One of His Attorneys

Alexander Loftus, Esq.
Deanna LePage, Esq.
STOLTMANN LAW OFFICES
10 S. LaSalle, 35th Floor
Chicago, Illinois 60603
p: 312.332.4200
c: 312.772.5396
alex@stoltlaw.com

Firm No: 43671

Dated: March 2, 2017